**NEW CASTLE COUNTY, Rhone–
Poulenc, Inc., Zeneca, Inc. and
ICI Americas, Inc., Plaintiffs,**

v.

**HALLIBURTON NUS CORP., Defendant.**

Civ. A. No. 93–504–LON.

United States District Court,
D. Delaware.

Oct. 6, 1995.

Julie M. Sebring of New Castle County Law Department, Wilmington, Delaware (George J. Weiner of McCutchen, Doyle, Brown & Enersen, Washington DC, of counsel), for Plaintiff New Castle County.

Joseph C. Kelly and Heather C. Winett of Zeneca, Incorporated, Wilmington, Delaware, for Plaintiffs Rhone–Poulenc, Inc., Zeneca, Inc., and ICI Americas, Inc.

Phebe S. Young of Bayard, Handelman & Murdoch, P.A., Wilmington, Delaware (Lawrence H. Schwartz and Stephen E. Williams of Bayh, Connaughton, Fensterheim, & Malone, P.C., of counsel), for Defendant Halliburton NUS Corporation.

### OPINION

LONGOBARDI, Chief Judge.

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs [1] incurred cleanup obligations when they entered into a consent agreement to settle a lawsuit brought by the EPA relating to the Tybout's Corner landfill site (the "Landfill"), *United States v. New Castle County, et al.*, Civil Action No. 80–489 (LON) (the *"USA* action"). In the case *sub judice,* Plaintiffs seek to recover some of those costs from Defendant, Halliburton NUS Corporation ("NUS").

Prior to the signing of the consent agreement, NUS contracted with the EPA to perform a Remedial Investigation/Feasibility Study ("RI/FS") for the Landfill. In the course of the RI/FS, NUS installed a well, referred to as TY–311, in an area where refuse had been emplaced during the operation of the facility. Installation of this well and analysis of the borings obtained during its construction were intended to determine, *inter alia,* the presence of the Merchantville Formation. The Merchantville Formation is a clay strata that separates the shallow formation known as the Columbia Sand (which contains ground water impacted by landfill material) and the underlying formation known as the Potomac Sand (which contains the ground water serving as a major supply of drinking water for New Castle County).

[Second Amended Complaint, Docket Item ("D.I.") 64 ¶¶ 6–7].

In this action, Plaintiff's contend that: 1) NUS constructed the TY–311 well improperly, resulting in the creation of a "window" in the Merchantville formation that could function as a conduit between the Columbia Sand and the Potomac Sand; and 2) based upon its analysis of data collected in connection with the installation of TY–311, NUS mistakenly reported that the Merchantville clay was missing beneath the Landfill in the vicinity of TY–311. One or both of these contentions provide the underlying bases for the three Counts contained in Plaintiff's second amended complaint.

Count I is brought under common law negligence and is supported by both the improper construction contention and the improper analysis contention.

Count II is brought under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* and seeks to hold NUS liable as an operator and/or arranger under 42 U.S.C. § 9607(1) and/or (3). Count II is supported by the improper construction contention.

Count III is brought under the Delaware Hazardous Substances Cleanup Act ("HSCA"), and seeks to hold NUS liable under 7 Del.C. §§ 9105(a)(1), (2), (4), and/or (5). Count III is supported by the improper construction contention.

NUS moves for summary judgment on Count I on the grounds that defendant owed no duty of care to plaintiffs. NUS moves for summary judgment on Count II on the grounds that plaintiffs' CERCLA claim is a claim for contribution and as such is time barred by the three year limitations period applicable to contribution claims.

On March 24, 1994, this action was referred to the Honorable Mary Pat Trostle, United States Magistrate–Judge. [D.I. 18]. Presently before the Court is her Report and Recommendation ("R & R"), [D.I. 27], in which she recommends that NUS's motion for summary judgment on Counts I and II be

---

**1.** By use of the word "plaintiffs" the Court also includes plaintiffs' corporate predecessors.

denied. NUS has filed Objections to the R & R, [D.I. 73], and Plaintiffs have filed a Response to NUS's objections, [D.I. 79].

## II. SUMMARY JUDGMENT STANDARD

 Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact that can be resolved at trial and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Materiality is determined by the substantive law that governs the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmoving party. *Id.* Following a determination that no genuine dispute of material facts exists, the moving party must demonstrate that it is entitled to judgment as a matter of law.

 Any doubts as to the existence of genuine issues of fact will be resolved against the moving party and all inferences to be drawn from the material it submits will be viewed in the light most favorable to the party opposing the motion. *Norfolk Southern Corp. v. Oberly*, 632 F.Supp. 1225, 1231 (D.Del.1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)), *aff'd*, 822 F.2d 388 (3d Cir.1987). If the evidentiary record supports a reasonable inference that the ultimate facts may be drawn in favor of the responding party, then the moving party cannot obtain summary judgment. *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 258 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. NUS's "PROCEDURAL" OBJECTIONS

NUS objects to two portions of the Magistrate's Report and Recommendation on what NUS characterizes as "procedural" grounds. First, NUS objects to the statements contained in the "Factual Background" section of the Report and Recommendation, contending that the Magistrate–Judge listed as undisputed facts items that are very much in dispute. The Court interprets the Report and Recommendation not as expressing undisputed facts, but rather expressing the facts in a light most favorable to the plaintiffs, as they necessarily must be viewed at this stage. If the presentation of facts in the Report and Recommendation seems one-sided, this is because at this stage NUS does not present any factual contentions of its own but rather relies solely on legal arguments regarding duty of care (Count I) and statute of limitations (Count II). Indeed, NUS makes perfectly clear that it intends to dispute plaintiffs' version of the facts at trial if its legal arguments fail [D.I. 56 at 2 n. 1].

Second, NUS contends that the Magistrate–Judge ignored NUS' reply brief, D.I. 56, because the Magistrate did not specifically mention it in the opening paragraph of the Report and Recommendation. The fact that the Magistrate–Judge did not specifically list each document filed by the parties does not indicate that she ignored the parties' arguments. In any event, the Court has considered all arguments presented by the parties in its *de novo* review of the record in this case.

## IV. COUNT I—COMMON LAW NEGLIGENCE

NUS contends that summary judgment is appropriate with respect to Count I because NUS owed a duty only to the public, pursuant to Section 288 of the *Restatement (Second) of Torts*:

The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively:

. . . .

(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public.

NUS contends that the Eighth Circuit's recent decision in *Tri–State Mint, Inc. v. Riedel Environmental Services, Inc.*, 29 F.3d 424 (8th Cir.1994) supports a finding that NUS owed no duty to plaintiffs as a result of its contract with the EPA. In *Tri–State*, the Eighth Circuit relied upon the public duty doctrine in holding that a specific South Dakota statute did not establish a private duty of care between Riedel, a contractor hired by the state of South Dakota, and Tri–State, a suspected polluter. *Id.* at 426–27.

Magistrate–Judge Trostle found that *Tri–State* was distinguishable from the case *sub-judice* because section 9619(a) of CERCLA,[2] in direct contrast to the South Dakota statute, specifically creates a cause of action in favor of PRPs such as the plaintiffs. The Court adopts that finding. Under section 9619(a)(1), a response action contractor is not liable under CERCLA or any other federal law to any person absent a finding that the response action contractor was negligent, grossly negligent, or engaged in intentional misconduct. Thus, a response action contractor *is* liable to "any other person" who is harmed by that response action contractor's negligence. The phrase "any other person" is broad, and does not specifically exclude potentially responsible parties ("PRPs") such as plaintiffs.

Moreover, In *Tri–State* the Eighth Circuit specifically found that Riedel's actions were taken as an agent of the state in performance of a public duty under the state statute. *Id.* at 426–27. In contrast, the structure of § 9619 creates an independent contractor relationship which "contemplates that a response action contractor will be independently liable for negligence and other tortious behavior." *Amtreco, Inc., v. O.H. Materials, Inc.*, 802 F.Supp. 443, 446 (M.D.Ga.1992).

The only new argument presented by NUS in its objections to the Report and Recommendation is that subjecting response action contractors to negligence liability claims from PRPs would have a chilling effect upon cleanup efforts, presumably because it will make individuals and companies less interested in becoming response action contractors. The legislative history indicates, however, that section 9619 was a measured response to an even greater "chilling effect," the specter of strict liability. Prior to the enactment of section 9619, "response action contractors, despite the exercise of due care and satisfactory performance of contract specifications, could, by virtue of their involvement with hazardous waste sites, be included in the definitions of owner, generator, or transporter and therefore could be subject to [strict] liability." H.R.Rep. No. 99–253(I), 99th Cong., 2nd Sess., 92, *reprinted in* 1986 U.S.C.C.A.N. 2835, 2874.

Section 9619 was enacted to "clarif[y] and differentiat[e] the liability of response action contractors ... from the liability of responsible parties." *Id.* Congress chose to provide additional protection in the form of a negligence threshold. Congress chose not to provide additional protection in the form of limiting the expansive phrase "any other person," and this Court will not read such a limitation into the statute.

For these reasons, and for the reasons stated by Magistrate–Judge Trostle in her Report and Recommendation, the Court finds that the "public duty doctrine" does not operate as a bar to Count I, and will deny NUS' motion for summary judgment with respect to Count I.

The Court's ruling is founded upon the presumption, unchallenged by either party in any of the summary judgment briefing, that

---

**2.** Section 9619(a) provides in relevant part:

**(a) Liability of response action contractors**

**(1) response action contractors**

A person who is a response action contractor with respect to any release or threatened release of a hazardous substance ... shall not be liable under this subchapter or under any other federal law to any person for injuries, costs, damages, expenses, or other liability (including but not limited to claims for indemnification or contribution and claims by third parties for death, personal injury, illness or loss of or damage to property, or economic loss) which results from such release or threatened release.

**(2) Negligence, etc.**

Paragraph (1) shall not apply in the case of a release that is caused by conduct of the response action contractor which is negligent, grossly negligent, or which constitutes intentional misconduct.

§ 7619 governs NUS's liability. This caveat is necessary only because in previous briefing plaintiffs have argued that NUS should be subjected to a strict liability standard because well TY–311 was installed in 1984, prior to the passage of the 1986 amendments adding § 7619. [D.I. 32 at 5 n. 4]. The Court intends to order additional briefing on this issue. If upon further review the Court determines that § 7619 is inapplicable to this case, the Court will permit NUS to revisit this issue if it so desires.

## V. COUNT II—CERCLA

CERCLA creates two causes of action under which parties can recover environmental response costs: (1) a cost recovery action under § 107(a), 42 U.S.C. 9607(a), and (2) a contribution action under § 113(f)(1), 42 U.S.C. 9613(f)(1).

Section 107 provides that certain enumerated classes of persons, who are commonly referred to as "potentially responsible parties" or "PRPs" are strictly liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." § 107(a)(4)(B).[3]

Section 113(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable" under CERCLA.[4]

---

3. Section 107(a) states in relevant part:

(a) **Covered Persons; scope; recoverable costs and damages; interest rate; "comparable maturity date"**

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport or disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

4. Section 113(f) states in relevant part:

(f) **Contribution**

(1) **Contribution**

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the Court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

(2) **Settlement**

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

(3) **Persons not party to settlement**

(A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such an action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement referred to in paragraph (2).

■ The issue raised by NUS's motion for summary judgment with respect to Count II is whether plaintiffs, who have resolved their CERCLA liability with the government by virtue of a consent decree dated April 19, 1989, may pursue a § 107 claim against NUS, or whether Plaintiffs are limited to a § 113(f) claim. This distinction is crucial, because § 107 actions are subject to a six-year statute of limitations, 42 U.S.C. § 9613(g)(2), while § 113(f) actions are subject to a three-year statute of limitations, 42 U.S.C. § 9613(g)(3). NUS does not dispute that Plaintiffs' complaint was filed within the six-year period for § 107 actions. The limitations period for a § 113(f) action, however, was triggered by the entry of the judicially approved consent decree. 42 U.S.C. 9613(g)(3)(B). The present action was filed more than four years after that date. Thus, NUS contends that if Count II may only be construed as a § 113(f) claim it is time barred and must be dismissed. Resolving the relationship between these two statutory provisions requires an analysis of the statute, the legislative history, and the various decisions rendered on this issue, including certain decisions issued by this Court during the original *USA* action.

During the course of the original *USA* litigation, plaintiffs filed a third-party complaint under *CERCLA* seeking to recover some of their expenditures for clean-up costs from third parties. These third-party defendants moved to dismiss the third-party complaint, contending that plaintiffs claim was for contribution and no right for contribution existed under CERCLA. *United States v. New Castle County,* 642 F.Supp. 1258 (D.Del. 1986). At that time, the existence of a right to contribution was in doubt, as § 113(f) had not yet been enacted.

The Court noted at the outset that "some form of private right of action is authorized under CERCLA." *Id.* at 1261. The cases relied upon by the Court involved parties who had initiated cleanup of their own accord and in the absence of a lawsuit seeking to hold them liable under CERCLA. *See, e.g.,*

*Walls v. Waste Resources Corp.,* 761 F.2d 311 (6th Cir.1985); *Artesian Water Co. v. Govt. of New Castle County,* 605 F.Supp. 1348 (D.Del.1985). The Court noted that "serious questions" existed regarding whether a party retained this private right of action once sued:

> First, it is not clear that once a responsible party has been sued his monetary expenditures to abate an environmental hazard qualify as "necessary costs of response" under [CERCLA]. Second, it is unclear whether the phrase "any other person" in section 107(a)(4)(B) means only individuals engaged in voluntary cleanup or whether it also includes individuals who are CERCLA Defendants engaged in cleanup compelled by the threat of imminent statutory liability.

*Id.* at 1262.

The Court thus characterized claims by "individuals who are CERCLA defendants engaged in cleanup compelled by the threat of imminent statutory liability" as claims for contribution. The Court found that, despite the use of the language "any other person" in § 107(a)(4)(B), that § 107(a)(4)(B) did not support an implied right to contribution, basing this determination upon the following legislative history:

> The legislation would establish a Federal cause of action in strict liability to enable the [EPA] Administrator to pursue rapid recovery of the costs incurred for the costs of such [clean-up] actions undertaken by him from persons liable therefor and to induce such persons voluntarily to pursue appropriate environmental response actions with respect to inactive hazardous waste sites. *See,* H.R.Rep. No. 1016, 96th Cong., 2d Sess. 17, *reprinted in* 1980 U.S.Code Cong. & Ad.News 6119, 6120.

*Id.* at 1264. The Court found that a private cause of action to recover voluntarily incurred costs served CERCLA's express goal of achieving voluntary clean up, but a right to contribution did not encourage voluntary

**(C)** In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law.

clean up, "since it does not come into play until after a lawsuit has already been instituted against a responsible party." *Id.* at 1264–65. Thus, the Court concluded that § 107 did not create a right to contribution, that is to say, § 107 did not create a cause of action for individuals who are CERCLA defendants engaged in cleanup compelled by the threat of imminent statutory liability. The Court then found that a right to contribution did exist, but that it was founded in federal common law, not § 107.

On October 17, 1986, three months after the Court's Opinion, Congress amended CERCLA. Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. No. 99–499, § 101 et. seq., 100 Stat. 1613 (1986). The SARA amendments created an explicit statutory right to contribution, but it did not do so by clarifying that § 107 had always been intended to be available to PRPs who had been sued in enforcement proceedings and faced liability. Rather, the SARA amendments guaranteed a PRPs right to contribution via creation of a new statutory section, § 113(f)(1),[5] thus confirming the Court's prior finding that § 107 did not provide a cause of action to individuals who were CERCLA defendants engaged in cleanup compelled by the threat of imminent statutory liability. In essence, only months after this Court found a right to seek contribution under Federal common law, Congress replaced that common law right with an explicit statutory cause of action.

Subsequent to the passage of the SARA amendments, the *USA* action was settled by way of consent decrees between the Government and plaintiffs and the third-party defendants. This Court found that the consent decrees between these third-party defendants and the Government shielded the third-party defendants from any liability to plaintiffs for response costs incurred by plaintiffs in accordance with § 113(f)(2), which provides that any person "who has resolved its liability to the United States ... in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."

In resolving this dispute, the Court distinguished a decision which had allowed such a recovery, *Burlington N. R.R. v. Time Oil Co.,* 738 F.Supp. 1339 (W.D.Wash.1990). In *Burlington,* the court found that a PRP could maintain an action to recover response costs under both § 107 and § 113, and further found that the immunity from damages provided by § 113(f)(2) applied only to contribution claims. This Court rejected the reasoning of the *Burlington* Court, and further distinguished the *USA* action by noting that "the present action is one for contribution and not a cost recovery action." *U.S. v. New Castle County,* No. 80–489–LON, mem. op. at 7 (D.Del. September 8, 1992).

Courts have been fairly uniform in restricting actions which seek recovery under § 107 when permitting such an action would allow plaintiffs to make an "end-run" around the damages immunity provided by § 113(f)(2) to persons who have resolved their liability to the government. *See United States v. SCA Services of Indiana, Inc.,* 849 F.Supp. 1264, 1272–77 (N.D.Ind.1994) (collecting and discussing cases). This Court's decision in the *USA* action in which it found that consent decrees entered into by certain parties protected them from claims brought by plaintiffs falls into this category of cases. *U.S. v. New Castle County,* No. 80–489–LON, mem. op. at 7 (D.Del. September 8, 1992).

Courts have not been so uniform, however, in addressing when an action which appears to be grounded in contribution may be brought against a party that has not previously resolved its liability with the government. Certain courts have allowed § 107 claims to be brought against such parties. *SCA,* 849 F.Supp. at 1270 (collecting cases); *see also United States v. Atlas Minerals and Chemicals, Inc.,* 1995 WL 510304 (E.D.Pa. Aug. 22, 1995). Other courts, however, have taken the approach that all claims by one PRP against another are in essence claims for contribution, and may be only be brought pursuant to § 113(f). *See, e.g., United Technologies v. Browning–Ferris,* 33 F.3d 96 (1st Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995); *United*

---

**5.** The full text of § 113(f)(1) is set forth in foot- note 4.

*States v. Colorado & Eastern R.R. Co.*, 50 F.3d 1530 (10th Cir.1995); *Ekotek Site PRP Committee v. Self*, 881 F.Supp. 1516 (D.Utah 1995) (following *Colorado & Eastern R.R.*).

In *United Technologies*, the First Circuit found that there was no effective overlap between § 107 cost recovery actions and § 113 contribution actions:

> [t]he two statutes of limitations complement each other and together exhaust the types of actions that might be brought to recoup response costs: the shorter prescriptive period, contained in 42 U.S.C. 9613(g)(3), governs actions brought by liable parties during or following a civil action under [§§ 106 and 107], while the longer statute of limitations, contained in [§ 113(g)(2) ], addresses actions taken by innocent parties that have undertaken cleanups (say, the federal, state or local governments).

33 F.3d at 99. Thus, the *United Technologies* decision, if followed by this Court, would mandate the application of the three year statute of limitations to plaintiffs' claims.

The Magistrate–Judge distinguishes the *United Technologies* decision from the case *sub judice* by relying upon the following statement from the *United Technologies* decision: "Congress intended only innocent parties—not parties who were themselves liable—to be permitted to recoup the whole of their expenditures." [Report and Recommendation at 44 (quoting *United Technologies*, 33 F.3d at 100) ]. The Magistrate–Judge then concludes that because plaintiffs may potentially be "innocent parties" they may proceed under § 107. *Id.* at 45. The Magistrate–Judge bases her finding of potential innocence upon two grounds: 1) the amended complaint alleges that NUS, not plaintiffs, caused the release of hazardous substances at the TY–311 well site, and 2) plaintiffs made no admission as to liability under their consent decree with the government.

The Court declines to adopt the Magistrate–Judge's conclusions for 3 reasons.

First, the relevant "site" is the Tybout's Corner landfill, not merely the area immediately surrounding well TY–311. Plaintiffs are clearly PRP's with respect to this site. While the second amended complaint alleges that NUS's actions resulted in a release of hazardous materials in the vicinity of well TY–311, the complaint does not allege that the problems surrounding TY–311 were the *only* problems at the Landfill:

> The claims in the *USA* action were ultimately resolved via a consent decree which required [plaintiffs] to finance and implement certain remedial activities at the landfill designed, *inter alia*, to respond to recommendations made by NUS on the basis of its construction of well TY–311 and interpretation of data in connection with same.

[Second Amended Complaint, D.I. 64 ¶ 11]. The use of the phrase "*inter alia*" indicates that plaintiffs would not necessarily have been innocent parties regardless of the existence of well TY–311.

Second, the fact that the consent agreement does not contain an admission of liability is not dispositive. While plaintiffs have not made a formal admission of liability, they have incurred a substantial liability in that they have agreed to incur substantial costs to clean up the landfill. Through this action, plaintiffs seek to recover a portion of this obligation from NUS. This is a quintessential claim for contribution. The contribution right under CERCLA is flexible, as is demonstrated by this Court's continued characterization of Plaintiffs third party claims in the *USA* action as contribution claims well after the entry of the "no admission of liability" consent decree. *See USA v. New Castle County*, C.A. No. 80–489 (LON) (Mem. op. September 18, 1992) at 6–7. If a liability determination has not been made previously, this issue may be decided in the contribution action. *Transtech Industries Inc. v. A & Z Septic Clean*, 798 F.Supp. 1079, 1086 (D.N.J. 1992) (citing *Huggins v. Graves*, 337 F.2d 486 (6th Cir.1964), *appeal dismissed* 5 F.3d 51 (3d Cir.1993), *cert. denied* — U.S. ——, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994).

Third, the Court finds that the *United Technologies* holding does not turn on the question of whether a plaintiff is eventually found to be "innocent." The First Circuit clearly stated its view that all claims by

*potentially* liable parties, not liable parties, were claims for contribution and could be brought solely under § 113(f). *United Technologies,* 33 F.3d at 100. The Tenth Circuit, which has adopted the *United Technologies* holding, has taken a similarly broad view. *United States v. Colorado & Eastern R.R. Co.,* 50 F.3d 1530, 1536 (10th Cir.1995) ("There is no disagreement that both parties are PRP's ... therefore, any claim that would reapportion costs between these parties is the quintessential claim for contribution.").

In further support of the Court's interpretation of the *United Technologies* and *Colorado & Eastern R.R.* decisions, the Court notes with approval the following analysis by our fellow district court in Utah:

[Plaintiff] attempts to distinguish *Colorado & Eastern Rd.,* as well as the district court decisions taking a similar position, on two grounds. First, that in those cases the responsible parties had not, like the [plaintiff], "voluntarily" incurred response costs by assisting in the cleanup operations of the various sites, and second, that the plaintiffs in those actions were suing parties which had already settled their liability with the EPA.

[Plaintiff's] arguments have been found persuasive by other courts. *See Companies for Fair Alloc'n,* 853 F.Supp. at 580 (making similar distinctions). But *Colorado & Eastern Rd.* cannot be disposed of on such a basis; the broad language of the court's opinion prevents such an interpretation. The existence of such settlements plays no substantial role in the court's discussion of the issue. Rather, as the opinion makes clear, the decisive point was Farmland's status as a responsible party, expressed in the following syllogism: "There is no disagreement that both parties are PRPs by virtue of their past or present ownership of the site; therefore, any claim that would reapportion costs between these parties is the quintessential claim for contribution." *Colorado & Eastern Rd. Co.,* 50 F.3d at 1536. That it is the plaintiff's status as a PRP, and not the degree of voluntariness with which it initiated cleanup activity or the settling status

of other PRPs, which is controlling may be seen in the court's simple and straightforward approach to the issue, and its conclusion that "claims between PRPs to apportion costs between themselves are contribution claims pursuant to 113 regardless of how they are pled." *Id.,* at 1539.

*Ekotek Site PRP Committee v. Self,* 881 F.Supp. 1516, 1521 (D.Utah 1995).

 The Court adopts the *United Technologies* analysis and finds that this approach is consistent with the Court's prior rulings that § 107 does not provide a cause of action to individuals who are CERCLA defendants engaged in a clean up compelled by the threat of imminent statutory liability. While the effect of the three year statute of limitations may seem harsh in some cases, the Court's role is not to evade the limitations period established by Congress by judicially revising the statute. Not only are all limitations periods intrinsically harsh at times, but CERCLA also has many other harsh aspects, such as the imposition of strict liability upon PRPs whose involvement with a site occurred years before CERCLA was even a gleam in Congress's eye, or the provision of immunity from contribution actions to parties who resolve their liability with the Government.

Most importantly, however, the imposition of a statute of limitations does not frustrate the purposes of CERCLA, which *inter alia* is to achieve prompt clean up of polluted sites such as the Tybout's Corner Landfill. The deadline imposed by the statute of limitations encourages settling parties to move quickly and begin the work of investigating and cleaning up the site, for it is only by doing so that these settling parties can discover evidence of other as yet unknown polluters.

 That said, the Court does not find that the statute of limitations must necessarily act as an absolute bar in every instance. Plaintiffs submit that the doctrine of equitable tolling should be invoked to toll the statute of limitations in this case. The Court finds the briefing submitted regarding this issue to be inadequate, and will require additional briefing by both parties. The Court finds that Plaintiffs bear the burden of establishing that the doctrine of equitable tolling

may be utilized to toll the CERCLA statute of limitations and also bear the burden of establishing that the facts of this case justify tolling. Plaintiffs, therefore, shall be responsible for initiating the briefing in accordance with the schedule which shall be established by the Court in an Order to follow this Opinion. In this briefing, the Court expects that the parties shall address, *inter alia*, the following issues: (1) the appropriate analysis for determining whether a federal statute of limitations may be tolled; (2) whether any court has previously tolled a statute of limitations in a CERCLA action, and (3) whether courts have utilized the equitable tolling doctrine in cases involving federal statutes besides CERCLA.

Accordingly, the Court denies NUS's motion for summary judgment on Count II, but this denial is without prejudice pending further briefing on the equitable tolling doctrine.

## VI. CONCLUSION

The Court finds that the public duty doctrine does not operate as a bar to Count I and denies NUS's motion for summary judgment on Count I.

The Court further finds that plaintiffs' claim is a claim for contribution and as such must be brought under § 113(f) with its three year statute of limitations. The Court will deny NUS's motion for summary judgment on Count II, however, pending further briefing regarding whether the equitable tolling doctrine should operate to toll the statute of limitations in this case.