## CLEAR LAKE PROPERTIES

v.

## ROCKWELL INTERNATIONAL CORPORATION and Rockwell Space Operations Company

v.

## PACE, INC., d/b/a Pace Laboratories, Inc., Pace Incorporated, Halliburton/Nus Environmental Corporation, and Pace Analytical Services, Inc.

Civil Action No. G–95–288.

United States District Court, S.D. Texas, Galveston Division.

March 19, 1997.

---

**10.** These authorities are quoted in *Reynolds v. Massachusetts Cas. Ins. Co.,* 900 F.Supp. 915, 925 (E.D.Tenn.1995).

Walter D. James, III, Hutcheson & Grundy, Dallas, TX, Stephen S. Andrews, Woodard Hall & Primm, Houston, TX, Robert Alan Axelrad, Zimmerman Axelrad Meyer Stern & Wise, P.C., Houston, TX, Thomas Michael Wall, Hutcheson and Grundy, Houston, TX, Ross Citti, Jackson & Walker, Houston, TX, John R. Eldridge, Hutcheson and Grundy, Houston, TX, for Clear Lake Properties.

Tracie Jo Renfroe, Bracewell & Patterson, Houston, TX, for Rockwell Intern. Corp. and Rockwell Space Operations Co.

Robert L. Soza, Jr., Jenkens & Gilchrist, San Antonio, TX, for Pace Analytical Services, Inc.

Joanna Vague Hamrick, Sewell & Riggs, Houston, TX, Lloyd W. Landreth, Gardere & Wynne, Tulsa, OK, Robert Ellison Meadows, Gardere Wynne L.L.P., Houston, TX, Joan Krajewski, Dallas, TX, for Halliburton/Nus Environmental Corp.

## *ORDER*

KENT, District Judge.

In this CERCLA action, now before the Court are Third–Party Defendant Pace Analytical Services, Inc.'s, (PASI's) Motion for Judgment on the Pleadings and Motion for Summary Judgment and Rockwell International's (Rockwell's) Cross–Motion for Summary Judgment. For the reasons set forth below, PASI's Motion for Judgment on the Pleadings is **GRANTED IN PART** and **DENIED IN PART**; PASI's Motion for Summary Judgment is **DENIED** and Rockwell's Cross–Motion for Summary Judgment is **GRANTED.**

### I.

In this action Clear Lake Properties alleges that, during Rockwell's tenancy on Clear Lake Properties property located at 902–910B Gemini Avenue, Clear Lake, Texas, it contaminated the property and is thus liable for cleanup of the contamination under the CERCLA statute. Rockwell has brought suit as Third–Party Plaintiff against the various Third–Party Defendants alleging that as owners or operators of the adjacent property at 900 Gemini Avenue, they contaminated the Clear Lake Properties property and are thus liable for the cleanup under CERCLA. Third–Party Defendant PASI currently operates a laboratory on the adjacent property as a tenant of Third–Party Defendant Halliburton, the property owner.

1. The basic difference between these causes of action is that under § 107(a), defendants are held jointly and severally liable for the total response costs, whereas under § 113(f), defendants can only be held liable for their own portion of the total response costs, and that portion is determined by the Court.

### II.

Rockwell asserts two independent causes of action against PASI under CERCLA. First, Rockwell seeks to maintain a direct, private party cost recovery action against PASI under 42 U.S.C. § 9607(a) (CERCLA § 107(a)) to secure reimbursement for past and future response costs incurred by Clear Lake Properties and/or Rockwell. Second, Rockwell seeks, apparently in the alternative, to maintain an action against PASI under 42 U.S.C. § 9613(f) (CERCLA § 113(f)) to recover contribution to those response costs. As a preliminary matter, this Court must decide whether Rockwell may maintain a cost recovery action under § 107(a), or whether it is limited to a contribution action under § 113(f).[1]

The Fifth Circuit has not definitively reached the issue of whether one Potentially Responsible Party (PRP) can sue another under § 107. In *Amoco Oil v. Borden, Inc.,* 889 F.2d 664 (5th Cir.1989), after finding both parties liable under CERCLA, the Fifth Circuit remanded for a determination of damages. In its guidance to the district court, the Fifth Circuit stated, "[w]hen one liable party sues another to recover its equitable share of the response costs, the action is one for contribution ..." *Id.* at 672. In this case, however, liability has yet to be determined. Therefore, as there is no binding authority that is directly on point, the Court must look outside the Fifth Circuit for direction.

The only circuits that have addressed this issue have uniformly denied PRPs a § 107 cause of action. The First, Seventh, Tenth and, most recently, Eleventh Circuits have each determined that an action brought by PRP to recover costs is essentially a contribution action, no matter how it is pled, and as such, is governed by § 113.[2] *See Redwing*

2. The majority of, district courts have also followed this reasoning. *See, e.g., Stearns & Foster Bedding Company v. Franklin Holding Company,* 947 F.Supp. 790 (D.N.J.1996); *Reynolds Metals Co. v. Arkansas Power & Light Co.,* 920 F.Supp. 991 (E.D.Ark.1996); *Gould Inc. v. A & M Battery and Tire Service,* 901 F.Supp. 906 (M.D.Pa.1995); *United States v. Bay Area Battery,* 895 F.Supp.

*Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir.1996) (holding that a PRP's claims were claims of contribution under § 113; in order "to bring a cost recovery action based solely on Section 107(a), [the PRP] would have to be an innocent party."); *United States v. Colorado & Eastern R.R. Co.,* 50 F.3d 1530, 1539 (10th Cir.1995) ("[C]laims between PRPs to apportion costs between themselves are contribution claims pursuant to Sect. 113 regardless of how they are pled....") *United Technologies Corp. v. Browning–Ferris Industries,* 33 F.3d 96, 100 (1st Cir.1994) ("The statutory language suggests that cost recovery and contribution actions are distinct and do not overlap."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995); *Akzo Coatings v. Aigner Corp.* 30 F.3d 761, 764 (7th Cir.1994) (holding that claims among PRPs are governed by section 113(f)).

Rockwell relies on the Supreme Court's decision in *Key Tronic Corp. v. United States,* 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) in support of its contention that PRPs may bring claims both under § 107 and § 113. However, in *Key Tronic,* the Supreme Court was addressing whether $1.2 million in attorney's fees were recoverable under § 107. The Court held that those fees which were closely related to the actual cleanup were recoverable under § 107. *Id.* at 818–20, 114 S.Ct. at 1967. This was the only issue actually presented to the Court in *Key Tronic.* The Court's observation that CERCLA "now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107" is mere dicta. *Id.* at 816–18, 114 S.Ct. at 1966. Rockwell overstates the importance of this passing state-

ment.[3] Thus, Rockwell's reliance on *Key Tronic* in unfounded.

The Court is unpersuaded that as a PRP, Rockwell may bring a § 107 action against the Third–Party Defendant PASI in this action. Rockwell makes much of the fact that it has denied liability in the underlying action brought by Plaintiff Clear Lake Properties. However, as the lessee of a contaminated facility, Rockwell is undeniably a PRP in this action. Therefore, its claims against other PRPs, specifically the Third–Party Defendant PASI, to recover costs are essentially contribution actions, no matter how they are pled, and as such, are governed by § 113. Accordingly, PASI's Motion for Judgment on the Pleadings is **GRANTED** as to Rockwell's § 107 claims, and those claims are **DISMISSED WITH PREJUDICE.**

■ PASI further contends that Rockwell's § 113 contribution claims are not ripe as Rockwell has not yet paid more than its share of response costs. PASI's claim is directly contrary to the plain language of the CERCLA contribution statute, which states:

Any person may seek contribution from any other person who is liable or potentially liable under § 9607(a) of this title, *during or following any civil action ... under § 9607(a) of this title ....* Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under ... § 9607 of this title.

42 U.S.C. § 9613(f) (emphasis added). The first quoted sentence plainly states that a contribution action may be brought during a § 107(a) action, such as the one brought by Plaintiff Clear Lake Properties against Rockwell in this case. The second quoted sen-

---

1524 (N.D.Fla.1995); *New Castle County v. Halliburton NUS Corp.,* 903 F.Supp. 771 (D.Del.1995); *Ekotek Site PRP Comm. v. Self,* 881 F.Supp. 1516 (D.Utah 1995); *T H Agric. & Nutrition Co. v. Aceto Chem. Co.,* 884 F.Supp. 357 (E.D.Cal. 1995); *Kaufman & Broad–S. Bay v. Unisys Corp.,* 868 F.Supp. 1212 (N.D.Cal.); *Folino v. Hampden Color Chem. Co.,* 832 F.Supp. 757 (D.Vt.1993).

**3.** A review of several cases decided since the Supreme Court's decision in *Key Tronic* reveals that other courts have not interpreted the Supreme Court's dicta as establishing joint and several liability of a PRP in a suit brought by

another PRP under § 107. *See, e.g., Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir.1996); *United States v. Colorado & Eastern R.R. Co.,* 50 F.3d 1530, 1539 (10th Cir.1995); *Stearns & Foster Bedding Company v. Franklin Holding Company,* 947 F.Supp. 790 (D.N.J.1996); *Gould Inc. v. A & M Battery and Tire Service,* 901 F.Supp. 906 (M.D.Pa.1995); *New Castle County v. Halliburton NUS Corp.,* 903 F.Supp. 771 (D.Del.1995); *Plaskon Electronic Materials v. Allied–Signal,* 904 F.Supp. 644 (N.D.Ohio 1995).

tence plainly states that a party does. not even have to wait to be sued in a direct action before bringing a contribution action under § 113(f). Therefore, the statute clearly allows Rockwell to bring a contribution action pursuant § 113(f) at this time. Furthermore, the only effect of postponement would be to require this Court to try the exact same issues of liability, damages and apportionment in a second, separate action. This Court does not have the luxury of trying cases more than once. Accordingly, PASI's Motion for Judgment on the Pleadings as to Rockwell's § 113 claims is **DENIED.**

### III.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ To establish a *prima facie* case of liability for contribution under CERCLA a plaintiff must prove: (1) that the site in question is a "facility" as defined in § 101(9);

(2) that the defendant is a responsible person under § 107(a); (3) that a release or threatened release of a hazardous substance has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs. *Amoco Oil v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir.1989).[4] If the plaintiff establishes each of these elements and the defendant is unable to establish the applicability of one of the defenses listed in § 107(b),[5] the plaintiff is entitled to summary judgment on the issue of liability. *Id.* This is true even where the amount of appropriate damages is in dispute. *Id.* It is undisputed that a release of a hazardous substance has occurred which has caused Rockwell to incur response costs. The question of liability in this action hinges on whether the properties in question fall under the statutory definition of a "facility" and whether PASI is a responsible party within the meaning of CERCLA.

■ CERCLA broadly defines a "facility" as:

(A) any building, structure, installation, equipment, pipe or pipeline ..., well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) *any site or area where a hazardous substance has* been deposited, stored, disposed of, or placed, or otherwise *become located* ....

42 U.S.C. § 9601(9) (emphasis added) PASI does not question that hazardous substances have come to be located throughout the soil and groundwater underlying its laboratory building. PASI instead argues that the surface structures, *i.e.*, the laboratory, on its leased premises constitute a distinct "facility" from the subsurface soils and groundwater. This argument is frankly implausible given the plain language of the CERCLA statute, the facts of this case, and the governing case law.

The plain language of the statute gives an extremely broad definition of a "facility." It

---

4. Section 113 provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title." 42 U.S.C. § 9613(f). Therefore, a *prima facie* case for contribution under CERCLA requires the exact same elements as the *prima facie* case under § 107.

5. To establish a defense to liability, a defendant must prove by a preponderance of the evidence that the release or threatened release of a hazardous substance and the resulting damages "were caused solely by (1) an act of God; (2) an act of war; [or] (3) an act or omission of a third party...." 42 U.S.C. § 9607(b).

clearly states that "any site or area where a hazardous substance has ... become located ..." constitutes a facility. This definition on its face is broad enough to encompass virtually any place at which hazardous wastes have been found to be located. Moreover, the Fifth Circuit has given this literal definition wide breadth in its interpretation of the statutory language. For example, the Circuit has held that an entire subdivision constructed on previously contaminated land was a "facility" under CERCLA. *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1573 (5th Cir.1988). Furthermore, courts have consistently rejected attempts to create unnatural boundaries between different "facilities" based on legal ownership boundaries. For example, the lessee in one case argued, as PASI does here, that portions of a 20–acre contaminated site should not be considered a "facility" because the lessee had only leased portions of the area. *Northwestern Mutual Life Ins. Co. v. Atlantic Research Corp.,* 847 F.Supp. 389, 395 (E.D.Va.1994). The court rejected this argument, finding the fact that the lessee had leased only a portion of the property to be immaterial to defining the scope of the facility. *Id.*

Thus, in order to find that the laboratory building and the ground upon which it sits to be two distinct facilities in this case, the Court would have to abandon the normal usage of the English language. PASI makes much of the fact that, under its lease, it does not have the right or authority to control the groundwater or subsurface. However, the issue here is the release of hazardous substances which, as we all know, tend to leak to wherever they want to go, regardless of the rights and authorities of the responsible party. Thus, the Court does not find this argument to be a credible one. The CERCLA statute and Fifth Circuit case law leave no room for doubt; the entire property at 900 Gemini Avenue is a covered "facility."

■ To be liable as a responsible party under CERCLA, PASI must fall into one of the four categories set out in § 107(a). Only

the first two are relevant here: (1) the present owner or operator of a facility; and (2) persons who owned or operated the facility at the time of disposal hazardous substances on the property. 42 U.S.C. § 9607(a); *Joslyn Mfg. Co. v. Koppers Co., Inc.,* 40 F.3d 750, 760 (5th Cir.1994). PASI argues that it is not an "operator" because there must be a showing that the alleged operator had the ability to control the facility that caused the release of hazardous substances at the time the release occurred. However, this argument appears to confuse the distinction between these first two statutory categories.

The first tenet of CERCLA liability is that current owners and operators of a contaminated facility are strictly liable for the response costs incurred by other persons. *See* 42 U.S.C. § 9607(a); *see also* 42 U.S.C. § 9613(f). The Fifth Circuit explained, adopting the reasoning of the Second Circuit, that "the structure of the statute removes any doubt." *Tanglewood,* 849 F.2d at 1572.

[S]ection 9607(a)'s structure is clear. Congress intended to cover different classes of persons differently. Section 9607(a)(1) applies to all current owners and operators, while section 9607(a)(2) primarily covers prior owners and operators. Moreover, section 9607(a)(2)'s scope is more limited than that of section 9607(a)(1). Prior owners and operators are liable only if they owned or operated the facility "at the time of disposal of any hazardous substance"; this limitation does not apply to current owners.

*State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985). This liability is created to further the basic remedial purpose of CERCLA: to have those who benefit from the use of a contaminated site finance, at least in the first instance, the clean-up of the site. Thus as the current operator of the contaminated facility, PASI is a responsible party under § 107(a).[6]

■ As Rockwell has established each element of its *prima facie* case, the Court turns to examine whether PASI has established any of the applicable defenses listed in

---

**6.** PASI bemoans the fact that they have only operated the facility for a short time, since November 1995. That fact unfortunately does not entitle them to summary judgment at this stage; rather, it only is relevant in the determination of PASI's appropriate share, if any, of damages.

§ 107(b) to preclude summary judgment in favor of Rockwell. It has not. Generally, PASI argues that it should not be held liable because it did not contaminate the property and was not an owner or an operator at the time of the contamination. However, CERCLA specifically defines the degree of "innocence" required for a purchaser of contaminated property to avoid strict liability. PASI cannot, and does not attempt to, establish this defense.

The innocent purchaser defense relieves a current operator of liability if that party can establish by a preponderance of the evidence that, among other things, the release of hazardous substances was caused solely by an act or omission of a third party other than "one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant." 42 U.S.C. § 9607(b)(3). "Contractual relationship" is defined to include "instruments transferring title or possession," *e.g.*, leases, *unless* the lessee acquired the facility after the disposal or placement of hazardous substances and meets one of three conditions, only one of which might apply to this case. 42 U.S.C. § 9601(35)(A) That condition is:

> (i) At the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility.

*Id.* Therefore, since PASI took possession of the site by lease, it could only escape liability by showing that it neither knew, nor had reason to know of, the contamination at issue.

PASI cannot meet this burden because it had knowledge of the contamination when it acquired the property in November of 1995. PASI's CEO, who was also the CEO of Pace, Inc.,[7] admits that Pace, Inc. knew at least by April, 1993, that groundwater contamination had been discovered on the neighboring property, with the highest concentration of that contamination being found just a few feet from the boundary of the 900 Gemini Avenue property. Tests performed by Pace,

Inc.'s landlord confirmed that the contamination covered every quadrant of the 900 Gemini Avenue property in March 1994. Moreover, Pace, Inc.'s own tests confirmed the presence of additional contaminants in the vicinity of the underground waste treatment tanks soon after Pace, Inc. occupied the property in March 1993. Almost all of Pace, Inc.'s Houston employees continued as employees of PASI, as did the CEO. Therefore, PASI cannot conceivable argue that it did not know of the contamination prior to November 1995.

For all of the reasons set forth above, the Court finds that PASI is an operator of a facility where a release of a hazardous substance has occurred which has caused response costs to be incurred. As PASI has failed to establish any of the defenses listed in § 107(b), Rockwell is entitled to summary judgment. Accordingly, PASI's Motion for Summary Judgment is **DENIED**, and Rockwell's Cross–Motion for Summary Judgment is **GRANTED**. The case remains set on the Court's April 1997 trial docket for final resolution of all *remaining issues, including dam*ages and the apportionment thereof. The Court acknowledges Rockwell's Motion for Summary Judgment against Clear Lake Properties and Halliburton/NUS which was filed on March 17, 1997. Any responses to that Motion are due twenty (20) days from that date under the Local Rules. In anticipation of the rapidly advancing April trial date, the Court will address that Motion as soon as possible thereafter. All parties shall bear their own costs incurred herein to date.

**IT IS SO ORDERED.**

---

7. Pace, Inc. purchased the business and lease in March 1993. It later merged into Pace Incorporated, which in turn sold the Houston Laboratory to PASI in Fall of 1995.