SOUTHEAST TEXAS ENVIRONMEN-
TAL, L.L.C. and Regor Property,
L.L.C., Plaintiffs,

v.

BP AMOCO CHEMICAL COMPANY,
et al., Defendants.

No. CIV.A. G–03–969.

United States District Court,
S.D. Texas,
Galveston Division.

May 17, 2004.

Frank W. Mitchell, Maloney Martin & Mitchell, Houston, TX, for Southeast Tex-

as Environmental, L.L.C., Regor Property LLC, plaintiffs.

Mary W. Koks, Winstead Sechrest et al., James T. McBride, Winsead Secrest et al., The Woodlands, Sonya Lillie Aston, Campbell George et al., Houston, TX, Robert T. Stewart, Attorney at Law, Austin, TX, Daniel V. Flatten, Jenkins and Gilchrist, Houston, TX, Janessa M. Glenn, Jenkens & Gilchrist PC, Austin, TX, Jeffrey Lawrence Diamond, Galloway Johnson et al., Houston, TX, Paul Bohannen, Andrews Kurth, The Woodlands, Thomas S. Henderson, III, Floyd Isgur et al., William Carroll Book, Jr., Tekell Book Matthews and Limmer, John Erik Nichols, Henslee Fowler et al., Bryan S. Dumesnil, Bracewell and Patterson, Houston, TX, James Daniel Payne, Guida Slavich et al., Dallas, TX, Brady Sherrod Edwards, Edwards & George LLP, Robert Carl Scruggs, King LeBlanc et al., Daniel F. Shank, Coats Rose et al., Houston, TX, Ronald B. Walker, Walker Keeling et al., Victoria, TX, Patricia A. Shaw, LeBoeuf Lamb, Pittsburg, PA, Kay Woods, LTV Steel Company Inc., Seven Hills, OH, Jeffrey S. Davis, Gardere Wynne et al., Kimberly Rose Stuart, Crain Caton et al., Lauri DeBrie Thanheiser, Jones Day, Houston, TX, Jack C. Brock, Mills Shirley et al., Galveston, Kirk F. Sniff, Strasburger & Price, Dallas, TX, Michael Hendryx, Strong Pipkin et al., Karen Kay Maston, Connelly Baker et al., Houston, TX, Brian Carl Newby, Cantey & Hanger LLP, Sarah K. Walls, Cantey & Hanger LLP, Fort Worth, TX, Gary W. Dugger, Dugger Associates, Marta Eugenia Montenegro, Dugger and Associates, David Matthew Bates, Gardere Wynne et al., Thomas O. Deen, McFatridge Baker et al., Robert E. Morse, III, Crain Caton & James, Kelly D. Brown, Crain Caton et al., Jim D. Hamilton, Ross Banks et al., Houston, TX, Douglas W. Poole, McLeod Alexander et al., Galveston, TX, Thomas N. Griffin, III, Parker Poe et al., Charlotte, NC, R. H. Wallace, Jr., Shannon Gracey et al., Fort Worth, TX, Joyce B. Margarce, Powers & Frost LLP, Steven E. Thompson, Attorney at Law, Houston, TX, Allen Eli Bell, Bell Turney et al., Austin, TX, Daniel James Darcy, Porto Trueheart et al., Houston, TX, Thomas N. Kiehnhoff, Reaud Morgan et al., Beaumont, TX, John B. Turney, Bell Turney Coogan, Austin, TX, William Larry Wilson, Attorney at Law, Pasadena, TX, for BP Amoco Chemical Company, Successor by Merger to Amoco Chemical Corporation, Exxon Mobil Corporation, Successor by Merger to Exxon Chemical Co USA, Marathon Oil Company, Marathon Petroleum Company, Sea Lion Technology, Inc., Successor by Merger to Sea Lion Chemmical Inc, Pharmacia Corporation, f/k/a Monsanto Company by Solutia, Inc., The Goodyear Tire & Rubber Company, Groendyke Transport, Inc., Corporation General Dynamics Corporation, Baker Petrolite Corporation fka Petrolite Corporation, Texas Instruments Incorporated, Nalco Company, Champion Technologies Inc, Lyondell Chemical Co., Rohm and Haas Company, on behalf of Southwest Specialty Chemicals, Inc., Thiokol Specialty Chemicals, NL Industries Inc, Dixie Chemical Company Inc., Ryder Airlines Services Inc. nka Aviall Services Inc., Cargill Incorporated, Basf Corporation, BP Products North America, Inc., Matlack Inc., Crystal Chemical Co., successor to Crystal Manufacturing Corporation, Marathon Oil Corp, Eltex Chemical & Supply Co. aka Philip Reclamation Services, Maxus Energy Corp, Successor to Diamond Shamrock Corporation, Ondeo Nalco Co., Successor to Nalco Chemical Company, Lyondell–Citgo Refining LP, Successor to Arco Chemical Company and Lyondell Chemical Worldwide Inc., Thiokol Corporation, Successor to ATV Aerospace Company Inc. and Southwest Specialty Chemicals Inc., Younger Brothers

Inc, Mission Petroleum Carriers Inc., Successor to Ultramar DS Inc., Petrolite Inc., Mobil Chemical Company Inc., The Mason & Dixon Lines Incorporated, Griffin Corporation, Griffin Inc., Chemical Leaman Tank Lines Inc., NL Industries (USA) Inc., Lincoln Property Co, Southern Pacific Transportation Company, Betz Laboratories Inc., Successor to GE Betz Inc., Velsicol Chemical Corp, Ryder Bulk Transportation Services aka Ryder Transportation Services, Evans Harvey Corp LLC, Successor to Evans Cooperage Company Inc., Evans Cooperage Co, Steere Tank Lines Inc, Successor to Angrais Inc., Dow Badische Company, Successor to Badische Corporation, Trident Fractionators Inc., Successor to Cities Service Fractionators Inc., Gulf Oil Chemicals Company, Alcoa Inc., Successor to Aluminum Company of America, Georgia Tubing Corp, Successor to LTV Aerospace & Defense Company, CSA Limited Inc., Matheson Gas Products, Nippon Sanso USA Inc, Successor to Matheson Gas Products Inc., Power Cleaning Systems of Houston, Crown Cork & Seal Co Inc., Successor to Mundet Cork Corporation, PPG Industries Inc., BP Products North America, Inc. fka Amoco Oil Company, Amoco Oil Company dba American Oil Co., FMC Corp., Basf Corp., Union Carbide Corp., Peterbilt Motors Company, Enterprise Products, Successor to Enterprise Transportation Co., Enterprise Transportation Inc., Carpenter Chemical Co., E. R. Carpenter LP, Successor by Merger to Carpenter Chemical LP, Weatherford Aerospace Inc, Successor by Merger to Chemical Dynamics Inc., P. Chem. Inc., Successor by Merger to Chemical Manufacturing Exchange Inc., Warren Petroleum Co LLC, Vam Pts Co., Channel Shipyard Company Inc., Evans Houston Corp., Successor by Merger to Evans Cooperage Co. Inc., Rexam Beverage Can Co., Successor to American National Can Co., Cargo Tank Cleaning Inc., Howell Hydrocarbons & Chemicals, Rme Petroleum, Successor to Champlin Petroleum Co., Tenn–USS Chemicals, Successor to USS Chemicals, Phibro Inc., Successor to Petrol Refining Inc. and Texas City Refining Inc., Southwest Galvanizing Inc., Chief Supply Corp, PVI Industries Inc. aka PVI Industries LLC, Pharmacia & Upjohn Company, Successor to Upjohn Co., Champion Chemicals Inc., Blentech Corp., Platzer Shipyard Inc., Dal–Worth Industries Inc., Garrison Industries Inc., Phoenix Oil Inc., Pa Inc., Rexene Polyolefins, a Division of Dart Industries Inc., Electro–Coatings Inc, Sherman Wire Co., Successor to Desoto Inc., Shell Oil Co., W. R. Grace & Co–Conn, Mcwhorter Technologies Inc., Chemlink Petroleum Inc., Amoco Corporation, Successor to Amoco Oil Co. and Amoco Texas Refining Co., Tool & Supply Inc, Calgon Corp, Best Service Tank Wahs Inc., Torque Petroleum Products, Tuboscope Vetco International LP, Successor to AMF Tuboscope Inc., Chevron U.S.A., Inc., defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

KENT, District Judge.

This lawsuit centers on the operation of a hazardous waste facility in Texas City, Galveston County, Texas. The case comes before the Court on removal from the 10th Judicial District Court of Galveston County, Texas. Now before the Court comes Plaintiffs' Motion to Remand. Because the Court lacks subject matter jurisdiction, Plaintiffs' Motion is hereby **GRANTED**.

I. Background

Plaintiffs characterize this lawsuit as the latest chapter in a saga of treachery perpetrated by "outlaw waste disposal operators." The case arises out of the operation of a 150–acre toxic and hazardous

waste disposal facility located in Texas City, Texas, commonly known as the Malone Facility ("the Malone Facility" or "the Facility"). The Malone Service Company, Inc. owned and operated the Facility for over 30 years. In 1997, the Texas Natural Resource Conservation Commission ("TNRCC"), now known as the Texas Commission on Environmental Quality ("TCEQ"), revoked the Malone Facility's permits, causing the Facility to cease operations. Malone Service Company, Inc. and its parent company, Malone Company, Inc. (collectively "Malone") filed for Chapter 7 bankruptcy on July 15, 1998. The Chapter 7 Trustee filed a Motion to Sell the Malone Facility to Plaintiff Southeast Texas Environmental, L.L.C., on August 4, 1999. The bankruptcy court signed its Order granting the Motion to Sell on August 13, 1999.

Plaintiffs purchased the Facility on September 24, 1999. Plaintiffs maintain that they purchased the Facility innocently and in good faith with the intention of restoring operations in a lawful manner. Prior to the purchase, the Texas Attorney General and the TNRCC appointed Plaintiffs caretakers of the Facility with the approval of the United States Bankruptcy Court. Plaintiffs decided to purchase the Facility, despite its checkered past, because they believed that it could generate a multimillion dollar revenue stream for several years. Plaintiffs intended to use the toxic sludge for alternative energy sources, fuels, and refining products, and they planned to renew the operation of two deep-well injection disposal wells. Plaintiffs also intended to retrofit the Facility to serve the adjacent Texas City Container Port Terminal.

These plans ground to a halt when the EPA determined that there had been a release or threatened release of hazardous substances at the Facility. On October 26, 1999, the Superfund Division Director of EPA Region 6 signed an Action Memorandum declaring that conditions at the Malone Facility posed an imminent and substantial threat to the environment and the public health. On June 14, 2001, after an investigation of the site, the EPA declared the Facility a Superfund site and placed the waste pit on the National Priority List for Superfund cleanup. The EPA sent general notice letters to a number of potentially responsible parties ("PRPs"), including Plaintiff Southeast Environmental, L.L.C.[1] *See* Malone Cooperating Parties' Response to Plaintiffs' Motion to Remand, Exh. B.

Plaintiffs filed their Original Petition on June 12, 2003 in the 10th Judicial District Court of Galveston County, Texas. Plaintiffs sued over one hundred entities that operated or disposed of waste at the Malone Facility. Plaintiffs' Original Petition alleged generally that Defendants were responsible for the Facility's classification as a Superfund site and that, had the Facility not been declared a Superfund site, Plaintiffs would have provided substantial commercial services to the Texas City Container Port Terminal. Plaintiffs asserted the following claims: (1) negligence arising out of Defendants' disposal of waste at a facility known to have violated environmental laws; (2) negligent entrustment of hazardous waste to Malone; (3) strict tort liability for transportation of hazardous materials in a manner inconsistent with state environmental regulations; (4) fraudulent

---

1. CERCLA imposes joint and several liability upon PRPs, or "covered persons," which includes (1) the current owners and operators of a covered facility; (2) past owners and operators of the facility; (3) any person who arranged for disposal or treatment of hazardous substances at the facility; and (4) any person who accepts or accepted hazardous substances for transport to the facility. *See* 42 U.S.C. § 9607(a).

concealment of Malone's unlawful disposal practices; and (5) gross negligence. Plaintiffs' Original Petition enumerated the following categories of damages: (1) the reasonable and necessary expenses incurred to maintain the Malone Services Site while Plaintiffs were the designated caretakers of the Facility; (2) costs and expenses incurred in the purchase of the Facility; (3) lost revenue anticipated from renewal of deep well injection permits; (4) lost revenue anticipated from Plaintiffs' planned commercial and industrial waste disposal operations; (5) lost revenue anticipated from commercial services provided to container port facilities; and (6) the cost to fully and responsibly remediate the Malone Facility. On November 20, 2003, Defendants filed their Notice of Removal,[2] which asserted federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1441. On December 5, 2003, Plaintiffs filed their Motion to Remand, to which Defendants timely responded.

## II. Legal Standard

 Absent an express provision to the contrary, a defendant may remove a state-court action to federal court only if the suit could have been filed originally in federal court. See 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "Federal courts are courts of limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.2001). Federal courts must presume that all suits lie outside their limited jurisdiction, *id.*, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root*, 200 F.3d 335, 339 (5th Cir.2000). The party seeking removal bears the burden of proving that the Court has subject matter jurisdiction. *See, e.g., Manguno v. Prudential Property & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002).

Defendants allege, in their Notice of Removal, that this case comes within the Court's federal question jurisdiction. Congress has provided the federal courts with jurisdiction over "all civil actions arising under the Constitution, laws, and treaties of the United States." 28 U.S.C. § 1331. Generally, the existence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). If the plaintiff's well-pleaded complaint does not show that federal law creates the plaintiff's right of action, federal question jurisdiction may exist if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103

---

2. At the time that the Notice of Removal was filed, Plaintiffs had not served all of the named defendants. The Notice of Removal was filed by Defendants BP Amoco Chemical Company, Exxon Mobil Corporation, Marathon Oil Company, Marathon Petroleum Company, Sea Lion Technology, Inc., Pharmacia Corporation, Goodyear Tire & Rubber Company, Groendyke Transport, Inc., General Dynamics Corporation, Baker Petrolite Corporation, Texas Instruments, Inc., Nalco Company, Champion Technologies, Inc., Lyondell Chemical Company, Rohm & Haas Company on behalf of Southwest Specialty Chemicals, Inc. and Thiokol Specialty Chemicals, NL Industries, Inc., and Dixie Chemical Company, Inc. These *defendants*, referred *to* in the Notice of Removal as the "Malone Cooperating Parties," represented that all other defendants who had been served either consented to the filing of the Notice of Removal or were bankrupt entities. Plaintiffs do not object to the removal procedure.

S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). The artful pleading doctrine, an "independent corollary" to the well-pleaded complaint rule, provides that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998) (citation omitted). "The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim"; that is, when Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Arana v. Ochsner Health Plan,* 338 F.3d 433, 437 (5th Cir. 2003) (en banc), *cert. denied,* —— U.S. ——, 124 S.Ct. 1044, 157 L.Ed.2d 889 (2004) (quoting *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)).

## III. Analysis

The sole question before the Court is whether Plaintiffs' claims arise under federal law within the meaning of 28 U.S.C. § 1331. Defendants allege that this case arises under § 113(f)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(f)(1), which establishes a statutory right of contribution among PRPs. Plaintiffs' Original Petition does not invoke CERCLA directly; therefore, Defendants must establish that Plaintiffs' claims fall within the artful pleading doctrine in order to establish federal question jurisdiction. The Court's jurisdiction thus depends on the question whether a cost-recovery action by one PRP against other PRPs, though relying exclusively on state law, nonetheless "arise under" CERCLA § 113(f)(1) within the meaning of 28 U.S.C. § 1331. Defendants advance a number of arguments, which the Court considers in the order presented.

### A. Defenses Provided by the Administrative Order on Consent

Defendants have entered into an Administrative Order on Consent ("AOC") with the EPA to conduct a Remedial Investigation and Feasibility Study ("RI/FS") of the Facility. *See* Defendants' Response, Exh. A. Defendants claim that despite receiving the general notice letter provided by the EPA to all PRPs, Plaintiffs have failed to negotiate an agreement to conduct the RI/FS or to contribute funds to the investigation. Defendants argue that the AOC protects them from contribution actions or claims relating to matters addressed in the AOC. *See* AOC, Defendants' Response, Exh. A., at 27.[3] Defendants maintain that because the "matters addressed" in the AOC include "Future Response Costs," the AOC provides statutory protection from Plaintiffs' claims.

▪▪▪ Defendants do not explain how this alleged statutory defense provides the Court with subject matter jurisdiction. The Court can only suppose that Defendants seek to establish federal question

---

**3.** The relevant provision of the AOC provides:
 The Parties agree that Respondents are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by sections 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. 9613(f)(2) and 9622(h)(4), for "matters addressed" in this Consent Order. The "matters addressed" in this Order are the Work conducted and the Future Response Costs paid according to the requirements of this Order. Except as provided in Paragraph 92 and 93, nothing in this Order precludes the United States or Respondents from asserting any claims, causes of action, or demands against any persons not parties to this Order for indemnification, contribution, or cost recovery.
AOC at 27, para. 94.

jurisdiction by virtue of the AOC's incorporation of certain provisions of CERCLA. Even assuming that the AOC furnishes a defense against Plaintiffs' claims, this argument goes to the merits of the case, not to the Court's jurisdiction. The well-pleaded complaint rule dictates that subject matter jurisdiction cannot rest on a federal defense. *See Rivet,* 522 U.S. at 478, 118 S.Ct. at 925 ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim."). Accordingly, "a case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Id.* (citing *Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. at 2848). While the AOC's "Contribution Protection" provision may bode ill for Plaintiffs' claims, it does not support removal jurisdiction.

## B. Preemption

■ Defendants maintain that Plaintiffs' state-law claims are preempted by CERCLA and therefore arise under federal law. Ordinary conflict preemption, however, does not support subject matter jurisdiction. *See Rivet,* 522 U.S. at 478, 118 S.Ct. at 925. Even assuming that state-law contribution claims are preempted by CERCLA, this argument fails to establish that Plaintiffs' claims arise under federal law.

Defendants cite this Court's decision in *Clear Lake Properties v. Rockwell International Corp.,* 959 F.Supp. 763 (S.D.Tex. 1997), for the proposition that "an action brought by PRPs to recover costs is essentially a contribution action, no matter how it is pled, and as such, is governed by § 113." *Id.* at 766. "Under CERCLA," Defendants maintain, "any claim for recovery of costs between PRPs is a contribution action and must be characterized as

such." Response at 9. Defendants thus draw the conclusion that, because CERCLA does not permit PRPs to bring cost recovery actions, Plaintiffs claims must be recharacterized as contribution claims under CERCLA § 113, 42 U.S.C. § 9613. *Clear Lake Properties* does not support this inference.

In *Clear Lake Properties,* Rockwell, a defendant and PRP, filed a third-party claim against the owners and operators of an adjacent property, claiming that they had contaminated the plaintiff's property and were liable for the cleanup under CERCLA. The plaintiff, Clear Lake, had filed its claims in federal court. Rockwell filed two third-party claims: (1) a direct cost-recovery action under CERCLA § 107(a), 42 U.S.C. § 9607(a), for reimbursement of past and future response costs; and (2) a contribution claim under CERCLA § 113(f), 42 U.S.C. § 9613(f). *Id.* at 765. As the Court explained, the basic difference between the two provisions is that § 107(a) imposes joint and several liability for the total response costs, whereas § 113(f) only imposes liability for each defendant's portion of the total response costs. *See id.* at 765 n. 1. Relying upon the Fifth Circuit's holding in *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 672 (5th Cir.1989) ("When one liable party sues another to recover its equitable share of the response costs, the action is one for contribution ...."), the Court held that, even when liability remains undetermined, "an action brought by a PRP to recover costs is essentially a contribution action, no matter how it is pled, and as such, is governed by § 113." *Clear Lake,* 959 F.Supp. at 765.

While this Court's decision in *Clear Lake* establishes that a PRP cannot maintain a cost-recovery action under CERCLA § 107, it does not support Defendants' argument that Plaintiffs' claims somehow

arise under federal law. The present case differs from *Clear Lake* in two crucial respects. First, because the plaintiff in *Clear Lake* filed its complaint in federal court, relying on the provisions of CERCLA, the Court's subject matter jurisdiction was never in doubt. Second, the plaintiff's express reliance upon CERCLA necessarily limited the scope of the Court's decision. The Court held that a PRP's cost-recovery action under CERCLA § 107 must be recharacterized as a contribution claim under CERCLA § 113. Defendants equate the Court's recharacterization *within* CERCLA with recharacterization of a state-law claim as "arising under" federal law for purposes of artful pleading and removal jurisdiction. But *Clear Lake* did not address the recharacterization of state-law cost-recovery claims. Whether CERCLA requires that *state-law* cost-recovery claims between PRPs be characterized as contribution actions under § 113 must be determined by a complete preemption analysis.

## C. Artful Pleading Doctrine

### 1. Complete Preemption

Complete preemption doctrine applies when a federal statute "so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 773 (5th Cir.2003) (quoting *Carpenter v. Wichita Falls Ind. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir.1995)). This heightened preemptive power "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Taylor*, 481 U.S. at 65, 107 S.Ct. at 1547. The Supreme Court has found only three types of claims to be completely preempted by federal statutes: (1) claims brought under § 301 of the Labor Management Relations Act, *see Avco v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); (2) claims brought under ERISA's civil enforcement provision, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); and (3) usury claims against national banks under the National Bank Act, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

In *Avco*, the Supreme Court held that an action arising out of a collective bargaining agreement arose under § 301 of the Labor Management Relations Act, was therefore controlled by federal law, and was therefore removable to federal court as an action arising under federal law. *See Avco*, 390 U.S. at 559–60, 88 S.Ct. at 1237. In *Franchise Tax Board*, the Supreme Court offered the following explanation of *Avco:*

> The necessary ground of decision was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

*Franchise Tax Bd.*, 463 U.S. at 23–24, 103 S.Ct. 2841 (footnote omitted).

The *Taylor* Court's conclusion that ERISA's civil enforcement provision completely preempted state-law claims for benefits relied on ERISA's text and legislative history. First, the Court noted that the jurisdictional language of ERISA's civil enforcement provision closely parallels

the jurisdictional language in § 301 of the LMRA. *See Taylor*, 481 U.S. at 65, 107 S.Ct. at 1547.[4] In addition to the presumption that similar statutory language carries a similar meaning, the *Taylor* Court relied on ERISA's legislative history, which stated, in part, "All such actions [to enforce benefit rights or recover benefits] in federal or state courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor Management Relations Act of 1947." *Id.* at 65–66, 107 S.Ct. at 1547 (quoting H.R. Conf. Rep. No. 93–1280, p. 327 (1974)).

The Fifth Circuit's post-*Taylor* decisions required a plaintiff to meet three requirements in order to support removal based on complete preemption:

> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

*Hoskins*, 343 F.3d at 775 (quoting *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir.2000)). In *Beers v. North American Van Lines, Inc.*, the Circuit relied on the lack of clear Congressional intent that state-law claims be removable in holding that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706,

did not completely preempt state law claims for loss or damage to goods during interstate transportation by a common carrier. *See id.* (citing *Beers v. N. Am. Van Lines, Inc.*, 836 F.2d 910 (5th Cir.1988)). The Eleventh Circuit relied on a similar lack of "clear Congressional intent to permit removal" in holding that the National Bank Act did not completely preempt state usury claims against national banks. *See Anderson v. H & R Block, Inc.*, 287 F.3d 1038, 1047 (11th Cir.2002), *rev'd sub nom. Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 2064, 156 L.Ed.2d 1 (2003), *cited in Hoskins*, 343 F.3d at 775 n. 4.

In *Beneficial National Bank v. Anderson*, the Supreme Court held that the third element of the *Taylor*-based complete preemption analysis—the requirement of a clear statement of Congressional intent that state-law claims be *removable*—was not necessary. The Supreme Court held that "the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Anderson*, 539 U.S. at 9 n. 5, 123 S.Ct. at 2064. In *Hoskins*, the Fifth Circuit interpreted *Anderson* as "evidencing a shift in focus from Congress's intent that the claim be removable, to Congress's intent that the federal action be *exclusive*." *Hoskins*, 343 F.3d at 776.

In *Hoskins*, the Fifth Circuit found that Congress intended for the Carmack

---

**4.** The relevant language in ERISA reads, "The district courts of the United States shall have jurisdiction, regardless of the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." 29 U.S.C. § 1132(f), *quoted in Taylor*, 481 U.S. at 65, 107 S.Ct. at 1547. The parallel provision of the LMRA reads:

> Suits for violation of contracts between an employer and a labor organization rep-

resenting employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Amendment, 49 U.S.C. § 14706, "to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." *Hoskins,* 343 F.3d at 778. The Carmack Amendment was adopted "without discussion or debate," *id.* at 776 (quoting *Rini v. United Van Lines,* 104 F.3d 502, 504 (1st Cir.1997)), but longstanding Supreme Court precedent recognized Congress's clear intention to end the diversity of regulation of interstate shipment by common carrier by creating a national law that would supersede "all state laws as to the rights and liabilities and exemptions" created by such transactions. *See id.* (quoting *Adams Express Co. v. Croninger,* 226 U.S. 491, 505, 33 S.Ct. 148, 152, 57 L.Ed. 314 (1913)). The Supreme Court concluded that the clear purpose of the Carmack Amendment was to "take possession of the subject and supersede all state regulations with reference to it." *Adams,* 226 U.S. at 506, 33 S.Ct. 148, 57 L.Ed. 314. The Fifth Circuit later concluded that "[i]n actions seeking damages for the loss of property shipped in interstate commerce by a common carrier under a receipt of bill of lading, the Carmack Amendment is the shipper's *sole remedy.*" *Hoskins,* 343 F.3d at 777 (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 379 (5th Cir.1998)). Because the Carmack Amendment provided the sole remedy, the Circuit held that complete preemption doctrine applied, meaning that such claims would be deemed to arise under federal law for purposes of removal under § 1441. *Id.* at 778.

Whether complete preemption doctrine applies to Plaintiff's claims thus depends on the following question: Did Congress intend CERCLA § 113(f)(1) to provide the exclusive remedy for contribution actions by PRPs? Interpreting § 113(f) in *Aviall Services Inc. v. Cooper Industries, Inc.,* the en banc Fifth Circuit noted that "its

syntax is confused, its grammar inexact and its relationship to other CERCLA provisions ambiguous." 312 F.3d 677, 680 (5th Cir.2002) (en banc) (*"Aviall II"*). To make matters worse, "CERCLA is notorious for vaguely drafted provisions and an inconclusive, if not contradictory, legislative history." *Id.* at 684. CERCLA does not provide a clear answer to the complete preemption question, but the history of § 113 and existing Fifth Circuit case law lead the Court to the conclusion that Congress did not intend § 113(f)(1) to provide the exclusive cause of action for contribution among PRPs.

■ Congress passed CERCLA to serve two goals: the cleanup of the nation's hazardous waste sites and allocation of financial responsibility for such cleanup among responsible parties. *See Aviall II,* 312 F.3d at 681; *see generally* William D. Araiza, *Text, Purpose and Facts: The Relationship Between CERCLA Sections 107 and 113,* 72 Notre Dame L.Rev. 193, 203–04 (1996). In its original form, CERCLA did not specifically provide for a right of contribution among PRPs. *See Aviall II,* 312 F.3d at 682. Congress passed section 113(f) as part of the Superfund Amendments and Reauthorization Act of 1986, Pub L. No 99–499, 100 Stat. 1613 (1986). CERCLA § 113(f)(1) provides:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law.... Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under sec-

tion 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1). The Fifth Circuit concluded from the legislative history that "the avowed purpose of § 113(f)(1) was to give PRPs the 'explicit right to sue' for contribution and to 'confirm' the decisions of federal courts that had so construed CERCLA." *Aviall II*, 312 F.3d at 684 (quoting H.R.Rep. No. 99–253, pt. 1, at 59, 79 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2841, 2861; S.Rep. No. 99–11, at 44 (1985)). The legislative history suggests that Congress intended for federal common law to govern contribution claims brought under § 113(f)(1). *See* H.R. Rep. 99–253, pt. 5, at 24, *reprinted in* 1986 U.S.C.C.A.N. 3124, 3147 ("Any contribution action brought under this section is to be governed by Federal law."); H.R. Rep. 99–253, pt. 1, at 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2862 ("As with joint and several liability issues, contribution claims will be resolved pursuant to Federal common law."). The question remains whether Congress intended this explicit statutory right of contribution to supplant any contribution rights created by state law.

Plaintiffs rely on *MSOF v. Exxon Corp.*, 295 F.3d 485, 491 (5th Cir.2002), in which the Fifth Circuit held that "CERCLA does not completely preempt the plaintiffs' claims under state law. Therefore, the 'artful pleading' doctrine is inapplicable." The plaintiffs in *MSOF* filed a complaint in state court alleging that toxic chemicals from a nearby waste disposal facility had contaminated their land. The defendants removed the case to federal court. The district court denied the plaintiffs' motion to remand, holding that the plaintiffs' state-law claims arose under CERCLA. *Id.* at 488–89.[5] The plaintiffs' complaint stated claims of negligence and strict liability under Louisiana law. The complaint alleged that the facility had been maintained in violation of federal as well as state law, but the Circuit found this allegation insufficient to render the action one arising under federal law. *See id.* at 490 (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1169–71 (5th Cir.1988)). The defendants also argued that because CERCLA created a cause of action that would provide the plaintiffs' with the relief sought— compensatory damages for the cost of restoring and remediating their property— the plaintiffs actually sought relief under federal law. *Id.*

The Fifth Circuit rejected this argument, concluding that the plaintiffs were free to pursue their claims under Louisiana law, which also provided a cause of action for the relief sought. The Circuit relied on CERCLA's general saving clause, which provides:

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants. The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines, to activities relating to haz-

---

5. The district court also found that it had jurisdiction under the All Writs Act, 28 U.S.C. § 1651, because the plaintiffs' claims could potentially interfere with a consent decree entered in an earlier case involving the same facility. *See MSOF*, 295 F.3d at 489. The Fifth Circuit held that the case presented "no circumstances that could permit removal jurisdiction under the All Writs Act, if, indeed, such removal jurisdiction is ever permitted." *Id.* at 494.

ardous substances, pollutants, or contaminants or other such activities.

42 U.S.C. § 9652(d). The *MSOF* panel also relied upon the following language in CERCLA § 107, which creates liability for response costs:

> Recovery by any person ... for response costs or damages resulting from a federally permitted release shall be pursuant to existing law in lieu of this section. Nothing in this paragraph shall affect or modify in any way the obligations or liability of any person under any other provision of State or Federal law, including common law, for damages, injury, or loss resulting from a release of any hazardous substance or for removal or remedial action of such hazardous substance.

42 U.S.C. § 9607(j). Finally, the Circuit noted that it and other courts had construed CERCLA's saving clauses "in accordance with their plain meanings and ... held that they preserve parties' rights arising under state law." *MSOF*, 295 F.3d at 491 (citing *Aviall Servs. v. Cooper Indus.*, 263 F.3d 134, 140 (5th Cir.2001) ("*Aviall I*"), *rev'd on other grounds*, 312 F.3d 677 (5th Cir.2002) (en banc), *cert. granted*, —— U.S. ——, 124 S.Ct. 981, 157 L.Ed.2d 811 (Jan. 9, 2004); *PMC, Inc. v. Sherwin–Williams Co.*, 151 F.3d 610, 617 (7th Cir.1998)); *see also ARCO Environmental Remediation, LLC v. Dep't of Health and Environmental Quality*, 213 F.3d 1108 1114 (9th Cir.2000) ("CERCLA does not completely occupy the field of environmental regulation.").

Defendants seek to distinguish *MSOF* on the basis that the *MSOF* plaintiffs were innocent landowners, whereas Plaintiffs are PRPs who purchased the Facility with full knowledge that it was contaminated. Defendants cite *PMC, Inc. v. Sherwin–Williams Co.* for the proposition that CERCLA's saving clause was designed to protect only innocent parties. *See PMC*, 151 F.3d at 617 ("The purpose of CERCLA's savings clause is to preserve to victims of toxic wastes the other remedies they may have under federal or state law."). But the Seventh Circuit did not deny the *PMC* plaintiff's state-law claim because of the limitations of CERCLA's general saving clause; its decision was based on the Supremacy Clause. The Court found that the right of contribution provided by the Illinois Contribution Act and invoked by the PRP plaintiffs was limited by CERCLA. The Court concluded that "PMC's invocation of Illinois' contribution statute is an attempt to nullify the sanction that Congress imposed for the kind of CERCLA violation that PMC committed." *PMC*, 151 F.3d at 618. The Court cautioned that "CERCLA's savings clause must not be used to gut provisions of CERCLA." *Id. PMC* does not stand for the proposition that CERCLA's contribution provision converts state-law contribution claims into federal claims. It stands for the less extraordinary proposition that a plaintiff cannot prevail on a state-law contribution claim that would undermine the limitations imposed on a PRP's right to contribution by CERCLA.[6] Though it supports the argument for conflict preemption, *PMC* stops well short of a statement that state-law contribution claims by a PRP necessarily arise under CERCLA.

Both of the Fifth Circuit's decisions in *Aviall Services, Inc. v. Cooper Industries, Inc.* suggest that the *MSOF* court's broad

---

**6.** It is worth noting that the *PMC* plaintiff filed its claims in federal district court, stating claims under CERCLA and the Resource Conservation and Recovery Act, 42 U.S.C. § 6900, in addition to its state-law claim under the Illinois Contribution Act. *See PMC*, 151 F.3d at 613.

reading of CERCLA's general savings clause extends to PRPs who choose to pursue state-law contribution claims. Aviall Services had purchased an aircraft engine maintenance business, including related facilities, from the prior owner in 1981. Several years later, Aviall discovered contamination at its facilities and notified the TNRCC, which then informed Aviall that it was in violation of Texas environmental laws. *Aviall I*, 263 F.3d at 136. Aviall then spent ten years and several million dollars on an environmental cleanup of the contaminated facilities. In 1997, Aviall filed a lawsuit against the previous owner of the facilities based in part on 42 U.S.C. § 107(a), CERCLA's cost-recovery provision. Aviall later dropped its § 107 claim and stated a contribution claim under CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1), as well as claims under the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ann. § 361.344(a), and the Texas Water Code, Tex. Water Code Ann. § 26.3513(j). Aviall admitted that neither the EPA nor any private party had filed claims against it under CERCLA. The district court dismissed Aviall's CERCLA contribution claim, holding that it could not state a 113(f)(1) contribution claim unless it was subject to a prior or pending federal administrative abatement action under CERCLA § 106 or a private cost-recovery action under § 107(a). The district court then declined to exercise supplemental jurisdiction over Aviall's state-law claims. *See Aviall I*, 263 F.3d at 136.

The precise issue presented on appeal in *Aviall* was whether a PRP could state a contribution claim under § 113(f)(1) in the absence of a pending or prior claim against it under § 106 or § 107. *See Aviall I*, 263

F.3d at 137. In *Aviall I*, a panel of the Fifth Circuit held that § 113(f) did not permit PRPs to bring a contribution claim before a civil action had been filed against it. The panel decision focused on the first sentence of § 113(f)(1), which creates a right to seek contribution "during or following" a civil action under CERCLA. *See id.* at 138. The panel also relied on the plain meaning of the term "contribution," reasoning that "the commonly accepted definition of contribution requires a tortfeasor to first face judgment before it can seek contribution from other parties." *Id.* Finally, the Circuit relied on the meaning of the term "may," concluding that "when the word 'may' is used as an enabling provision creating a cause of action (as it is here), it establishes an exclusive cause of action and means 'shall' or 'must.'" *Id.* at 139. Accordingly, the enabling clause, which provides that a party "may seek contribution ... during or following any civil action" required a pending or completed civil action to trigger the statutory right of contribution.

Aviall argued that the savings clause in § 113(f)(1)[7] created a right to pursue a CERCLA contribution claim before a civil action had been filed. The Circuit disagreed, holding that the savings clause meant that "the statute does not affect a party's ability to bring contribution actions based on *state* law." *Id.* The panel quoted the Seventh Circuit's statement in *PRP* that Congress intended the § 113(f)(1) savings clause to "merely nix an inference that the statute in which it appears is intended to be the exclusive remedy for harms caused by the violation of the statute," *id.* at 140 (quoting *PMC*, 151 F.3d at 618); more specifically, "to preserve state law-based claims of contribution." *Id.*

---

7. The savings clause provides, "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title." 42 U.S.C. § 9613(f)(1).

Judge Weiner's dissent from the panel's interpretation of § 113 suggests that he did not disagree with the notion that state-law claims were preserved, but with the notion that a saving clause would be necessary to do so:

> If, as the majority contends, Congress meant for the savings clause merely to acknowledge that a party seeking contribution for environmental clean-up may bring a *state* action in response to *state* orders or judgments (something Congress need not say or do because—short of making CERCLA preemptive—it cannot prohibit it) surely Congress would have made that distinction explicit, as it did in CERCLA's general savings clause.

*Aviall I*, 263 F.3d at 147 (Weiner, J., dissenting).

In *Aviall II*, the en banc Circuit reversed the panel's opinion, holding that § 113 authorizes a PRP to bring a contribution claim regardless of whether a civil action has been filed. Most significantly to the question before the Court, the en banc Circuit did not dispute the notion that CERCLA § 113 preserves state-law contribution claims. The en banc majority commented that the panel's textual interpretation of § 113 "narrows the last sentence arbitrarily and without textual support to the preservation of state law contribution claims." *Aviall II*, 312 F.3d at 681. The *Aviall II* majority commented that its own "expansive reading of § 113(f)(1)—which enables a claim by a PRP 'at whatever time in the cleanup process the party, seeking contribution, decides to pursue it'—suits the text better than the restrictive reading adopted by

the dissent." *Id.* at 686 (footnote omitted) (quoting *In re Reading Co.*, 115 F.3d 1111, 1120 (3d Cir.1997)). The *Aviall II* majority dismissed the dissent's argument that the restrictive reading of § 113 would be offset by the availability of state-law contribution claims:

> This is surely an inferior and questionable remedy for Congress to have embraced. Not all states allow contribution before the party seeking contribution has been subjected to judgment. And those that do follow quite different substantive and procedural rules. Moreover, as the dissent acknowledges, some courts of appeals have held that CERCLA preempts state-law claims for contribution for environmental clean-up costs.

*Aviall II*, 312 F.3d at 690–91 (footnotes omitted).[8] In other words, because not all states provide for pre-judgment contribution, many claimants must rely on CERCLA to recover for costs incurred in an environmental cleanup. Thus, while the en banc Circuit reversed the panel's restrictive interpretation of § 113(f)(1)'s enabling clause, its expansive reading of the savings clause embraces the proposition that Congress intended to preserve PRPs' ability to pursue state-law remedies.

The *Aviall II* court's discussion of the limited availability of state-law remedies suggests that in many states, plaintiffs will have no choice but to rely on federal law. Texas law, however, provides a parallel contribution action. The Texas Solid Waste Disposal Act, upon which Plaintiffs rely, creates a statutory cost-recovery action for responsible parties or third parties

---

8. The Circuit declined to express a view on the preemption question. *Aviall II*, 312 F.3d at 691 n. 30. It cited *Bedford Affiliates v. Sills*, 156 F.3d 416, 425—27 (2d Cir.1998), *PMC, Inc.*, 151 F.3d at 617, and *In re Reading Co.*, 115 F.3d at 1117, as examples of appellate decisions holding that CERCLA preempts state-law contribution claims. These decisions were based on conflict preemption; neither held that CERCLA completely preempted state-law contribution claims.

who incur costs resulting from removal or remediation of toxic waste. *See* Tex. Health & Safety Code Ann. § 361.344 (Vernon 2001).

Congress intended § 113(f)(1) to remove all doubt that CERCLA created a federal right to contribution among PRPs. *See Aviall II*, 312 F.3d at 684. But nothing in the text or structure of CERCLA indicates that Congress intended to preempt the field of hazardous waste cleanup entirely. The Court finds no evidence that Congress intended § 113(f)(1) to carve out an exception to CERCLA's general savings clause, which leaves the states broad discretion to address the problems created by hazardous waste. *See* 42 U.S.C. § 9607(j). Furthermore, applicable Fifth Circuit law sends a relatively clear signal that state-law contribution claims are among the causes of action preserved by the savings provision in § 113(f)(1) itself.

■ Whether Plaintiffs can actually recover under state law presents a different question that is not properly before the Court. The decision to rely solely upon state law carries a certain risk. Justice Holmes's often-quoted statement that the plaintiff is the master of his complaint gives plaintiffs the power to choose; it also imposes a responsibility to bear the consequences of the decision to rely solely upon state law. As the Fifth Circuit has cautioned, "[a] plaintiff with a choice between federal- and state-law claims may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one

day be precluded." *Carpenter v. Wichita Falls Ind. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir.1995). The wisdom of such a decision is for the plaintiff to decide. This Court can only decide the question of availability. In this case, the Court concludes that CERCLA § 113(f)(1) preserves a PRP's right to pursue state-law contribution claims.

### 2. "Necessarily Federal in Character"

Defendants argue that Plaintiffs' claims are removable under a Ninth Circuit doctrine that permits removal for claims that are "necessarily federal in character." *See ARCO Environmental Remediation, LLC v. Dep't of Health and Environmental Quality*, 213 F.3d 1108, 1114 (9th Cir. 2000).[9] This argument suffers from one obvious defect: Ninth Circuit precedent does not bind this Court. Perhaps more to the point, Fifth Circuit precedent commands a different result than does Defendants' interpretation of Ninth Circuit artful pleading doctrine. Most importantly, tracing the Ninth Circuit's artful pleading doctrine reveals that this third branch of artful pleading doctrine was intended to address the situation in which federal law provided the plaintiff's exclusive remedy. This concern is now subsumed under complete preemption doctrine. To the extent that the *ARCO* doctrine retains independent significance—that is, to the extent it purports to extend the artful pleading doctrine beyond the limits of complete preemption doctrine—this Court declines to adopt it on the ground that it conflicts with Fifth Circuit authority. *See Waste Control Specialists, LLC v. Envirocare of Tex.*,

9. In *ARCO*, the Ninth Circuit recognized the following artful pleading framework:

A federal court may exercise removal jurisdiction under the 'artful pleading' doctrine, even if a federal question does not appear on the face of a well-pleaded complaint, in three circumstances: (1) where federal law

completely preempts state law; (2) where the claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question.

*ARCO*, 213 F.3d at 1114.

*Inc.,* 199 F.3d 781 (5th Cir.2000) ("Without complete preemption, the artful pleading doctrine does not apply.").

The *ARCO* court cited *Brennan v. Southwest Airlines Co.,* 134 F.3d 1405 (9th Cir.1998), as an example of the "necessarily federal in character" branch of artful pleading doctrine. The plaintiffs in *Brennan* brought state-law claims in state court against three airlines for unlawful business practices and breach of contract. The defendants removed the case, arguing that the plaintiffs' claims constituted a tax refund suit and that the plaintiffs had artfully pleaded to avoid necessary federal claims. The *Brennan* court recognized that "the IRC provides the exclusive remedy in tax refund suits and thus preempts state-law claims that seek tax refunds." *Id.* at 1409 (citing *Sigmon v. Southwest Airlines Co.,* 110 F.3d 1200, 1204 (5th Cir. 1997)). The plaintiffs argued that because the "tax" charged by the airlines was not authorized by Congress, they did not seek a tax refund. The court rejected this argument on the ground that the governing statute defined a tax refund suit to include a suit to recover "any sum alleged to have been excessive or in any manner wrongfully collected." 26 U.S.C. 7422(a), *quoted in Brennan,* 134 F.3d at 1409. The court concluded that "a suit to recover a 'tax' or a 'sum' constitutes a suit for a tax refund." *Brennan,* 134 F.3d at 1410. Because the airlines wrongfully collected money as a tax, the plaintiffs' suit was a tax refund suit, and federal law provided the exclusive remedy.

■ In the Court's understanding, a claim that qualifies as "necessarily federal in character" under *Brennan* necessarily comes within complete preemption doctrine. The fact that the language of the Ninth Circuit's third option mirrors the Supreme Court's own language regarding complete preemption, *see Taylor,* 481 U.S.

at 63–64, 107 S.Ct. at 1546 ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is *necessarily federal in character.*") (emphasis added), provides the key to the substantive relationship between the two theories of removal jurisdiction. In *Brennan,* the Ninth Circuit clearly explained that its holding—that the plaintiffs' claims were "necessarily federal in character"—was based on the conclusion that federal law provided the exclusive cause of action for the plaintiffs' claims. *See Brennan,* 134 F.3d at 1409. The Supreme Court has since instructed that the same principle underlies the complete preemption doctrine. *See Anderson,* 539 U.S. at 9, 123 S.Ct. at 2064. Simply put, a claim is completely preempted if federal law provides the exclusive cause of action. Therefore, to the extent that the "necessarily federal in character" branch of artful pleading doctrine signifies that federal law provides the exclusive remedy, it merges with complete preemption doctrine.

### D. Exclusive Jurisdiction Under CERCLA § 113(b)

Finally, Defendants invoke CERCLA's exclusive jurisdiction provision, arguing that if the federal courts have exclusive jurisdiction over CERCLA claims, such claims must necessarily be removable from state courts. CERCLA § 113(b)'s jurisdictional provision states that "United States district courts shall have exclusive jurisdiction over all controversies arising under this chapter without regard to the citizenship of the parties or the amount in controversy." 42 U.S.C. § 9613(b). Because Plaintiffs do not invoke the substantive or remedial provisions of CERCLA, the exclusive jurisdiction provision binds them only if their claims can be characterized as CERCLA claims. Defendants' invocation of CERCLA's exclusive jurisdic-

tion provision thus begs the question whether Plaintiffs' claims "arise under" CERCLA.

Defendants argue that Plaintiffs' claims arise under CERCLA because they constitute a "challenge" to a CERCLA cleanup; therefore, they are subject to the exclusive jurisdiction provision in § 113(b). *See ARCO*, 213 F.3d at 1115. The *ARCO* court began with the proposition that § 113(b) was "more expansive than ... those claims created by CERCLA," and "covers any 'challenge' to a CERCLA cleanup." [10] *Id.* (quoting *Fort Ord Toxics Project, Inc. v. Cal. Envtl. Protection Agency*, 189 F.3d 828, 832 (9th Cir.1999)). According to the Ninth Circuit, an action constitutes a challenge "if it is related to the goals of the cleanup." *Id.* (quoting *Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 239 (9th Cir.1995)).[11] The *ARCO* plaintiffs sought access to records related to an ongoing CERCLA cleanup. The court held that their claims did not constitute a challenge to the cleanup because the relief sought did not "alter cleanup requirements or environmental standards," or threaten to "terminate or delay" the cleanup. *ARCO*, 213 F.3d at 1115.

In *Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469 (9th Cir.1995), the plaintiffs filed a claim for injunctive relief against the Agency for Toxic Substances and Disease Registry, claiming that it had a mandatory duty under CERCLA to begin a health surveillance system in the region affected by the CERCLA site in question. The Ninth Circuit held that the action constituted a "challenge" because the injunctive relief

sought to "improve on the CERCLA cleanup." *Id.* at 1482. In *Fort Ord*, the plaintiffs requested a preliminary injunction against an ongoing cleanup, arguing that the California Department of Toxic Substances Control violated California law by failing to prepare an environmental impact statement before permitting the Army to deviate from a state-law prohibition on land disposal of toxic waste. *Fort Ord*, 189 F.3d at 830. The Ninth Circuit held that this was a "challenge" because the relief sought would interfere with the cleanup effort. *Id.* at 831. In *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325 (9th Cir.1995), the plaintiffs sought to compel the defendant Air Force base to comply with the reporting and permitting requirements of the Resource Conservation and Recovery Act ("RCRA"); procure a Clean Water Act ("CWA") permit, and comply with certain state-law notification requirements. Because the plaintiffs attempted to "improve" the CERCLA cleanup by altering the cleanup process itself, the court concluded that the plaintiffs' complaint constituted a "challenge" to the cleanup. *Id.* at 329–30.

In *Razore*, the plaintiffs alleged that the Tulalip Tribes' management of a CERCLA site violated RCRA and the CWA. Before the complaint was filed, the plaintiffs and other PRPs had agreed to conduct an RI/FS to evaluate potential cleanup plans. The government produced evidence that the relief sought by the plaintiffs would "effectively terminate the present RI/FS." *Razore*, 66 F.3d at 239. The plaintiffs' expert admitted that the relief sought would delay the work already in progress

---

**10.** This broad reading of § 113(b)'s "arising under" language was based on the conclusion that § 113(b) is "coextensive with § 113(h)," *ARCO*, 213 F.3d at 1115, which, with certain exceptions, postpones federal jurisdiction "to review any challenges to [CERCLA] removal or remedial action." 42 U.S.C. § 9613(h).

**11.** In *Razore*, the Ninth Circuit held that an RI/FS constitutes a "removal action" within the meaning of § 113(h); therefore, a claim that would affect the RI/FS constitutes a challenge to a CERCLA cleanup. *See Razore*, 66 F.3d at 239.

under the RI/FS. *Id.* at 240. Because the plaintiffs attempted to "dictate specific remedial actions and to alter the method and order for cleanup," the court concluded that their claims constituted a challenge to the cleanup. *Id.*

■ *ARCO* and the cases cited therein demonstrate that a "challenge" to a CERCLA cleanup involves a challenge to a specific aspect of a cleanup in progress, including attempts to alter environmental standards or delay the cleanup itself. Plaintiffs' claims do not seek to dictate specific remedial actions, alter cleanup requirements, or alter the environmental standards governing the cleanup. Defendants have not alleged that the relief sought by Plaintiffs would terminate or delay the remediation of the Malone Facility in any way. Plaintiffs seek only to recover costs incurred in maintaining the Malone Facility and damages for lost business opportunities resulting from the contamination of the Facility. The *ARCO* court recognized that "Congress did not want § 113(h) to serve as a shield against litigation that is unrelated to disputes over environmental standards." *ARCO*, 213 F.3d at 1115.[12] Because Plaintiffs' claims bear only on the liability of individual defendants and not on the cleanup itself, the Court concludes that Plaintiffs have not challenged a CERCLA cleanup.[13] Accordingly, the Court concludes that Plaintiffs'

claims do not arise under CERCLA within the meaning of § 113(b) and are not within the exclusive jurisdiction of the federal courts.

## IV. Conclusion

For the reasons stated above, the Court concludes that Plaintiffs' claims do not arise under federal law, and the Court lacks subject matter jurisdiction. Accordingly, Plaintiffs' Motion to Remand is hereby **GRANTED**, and the case is **REMANDED** to the 10th Judicial District Court of Galveston County, Texas. Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED**

---

12. Based on the Ninth Circuit's conclusion that § 113(b) is coextensive with § 113(h), the Court assumes that § 113(b) incorporates a similar reluctance to extend exclusive federal jurisdiction over cases not related to environmental standards.

13. The conclusion that Plaintiffs' claims do not constitute a challenge to a CERCLA cleanup prevents the Court from considering the ramifications of Defendants' argument that § 113(b), without more, establishes federal subject matter jurisdiction over state law claims. This argument rests on the premise that CERCLA's exclusive jurisdiction provi-

sion extends beyond the general federal question statute; in other words, that a "controversy" may "arise under" CERCLA—and thus come within the exclusive jurisdiction of the federal courts—even if none of the claims involved arise under federal law. At least one Circuit Court has expressed serious doubts about this proposition. *See Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 662 (4th Cir.1998) ("It is undisputed—and, of course, indisputable—that neither 42 U.S.C. § 9613(b) nor 28 U.S.C. § 1331 extends federal jurisdiction to state-law claims.").